IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RALPH JORDAN, Individually and    §
and On Behalf of All Others       §
Similarly Situated,               §
                                  §
              Plaintiff,          §
                                  §
v.                                §    CIVIL ACTION NO. H-16-1808
                                  §
HELIX ENERGY SOLUTIONS GROUP,     §
INC.,                             §
                                  §
              Defendant.          §

## MEMORANDUM OPINION AND ORDER

Plaintiff Ralph Jordan ("Jordan" or "Plaintiff") brought this action against defendant Helix Energy Solutions Group, Inc., ("Helix" or "Defendant") asserting claims for violation of the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 and 211.[1]  Pending before the court are Defendant Helix Energy Solutions Group, Inc.'s Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 27), and Plaintiff Ralph Jordan's Motion for Partial Summary Judgment ("Plaintiff's MPSJ") (Docket Entry No. 29).  For the reasons stated below, Plaintiff's MPSJ will be denied, plaintiff's objection to certain paragraphs of the Kenric McNeal Declaration will be overruled, and Defendant's MSJ will be denied.

---

[1]See Plaintiff's Original Complaint ("Complaint"), Docket Entry No. 1, p. 2 ¶¶3-4.

## I.  Factual and Procedural Background

**A.    Factual Background**

Helix provides, _inter alia_, rigless offshore well intervention services using specialized well intervention vessels. Jordan and the only other individual to opt-in to this action, Christopher Gordon ("Gordon"), worked as drillers on Helix's _Q4000_ and _Q5000_ vessels, respectively.  Both the _Q4000_ and the _Q5000_ are semisubmersible rigless vessels used to conduct well intervention in water depths of up to 10,000 feet.  Kenric McNeal, Helix's Director of Human Resources, states in his declaration that because these vessels are rigless no actual drilling occurs.[2]  Each vessel has a drill crew consisting of some combination of roughnecks, assistant derrickmen, derrickmen, and assistant drillers, all of whom are classified as non-exempt and paid on an hourly basis with overtime.[3]  On the vessels the drill crew is supervised by the

---

[2]Declaration of Kenric McNeal ("McNeal Declaration"), Exhibit A to Defendant's MSJ, Docket Entry No. 27-1, p. 2 ¶¶ 3-5. Although plaintiffs object to ¶¶8-9 of the McNeal Declaration as inadmissible parole evidence, _see_ Plaintiff Ralph Jordan's Response in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 35, pp. 23-24, plaintiffs have not objected to other paragraphs the declaration. All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[3]McNeal Declaration, Exhibit A to Defendant's MSJ, Docket Entry No. 27-1, p. 2 ¶6.

driller.[4]  Helix classified the driller position as exempt, and at all relevant times, plaintiffs were aware of that classification.[5]

A driller spends the majority of his time sitting in a control room, monitoring a series of computer screens to ensure that the well intervention operations are running smoothly.[6]  Drillers also review the well program with the toolpusher, company man, subsea engineer, superintendents, and any service hands, and if the driller disagrees with any portion of the well program, he makes recommendations to the toolpusher.[7]  Drillers also supervise drill crews.[8]  Drillers complete performance appraisal evaluations for their drill crew members every hitch, which entails scoring

---

[4]Driller Job Description, Exhibit D-1 to Defendant's MSJ, Docket Entry No. 27-9, p. 1.  See also Oral and Videotaped Deposition Ralph C. Jordan ("Jordan Deposition"), pp. 54:19-57:20, Exhibit D to Defendant's MSJ, Docket Entry No. 27-8, pp. 5-6.

[5]See Oral Videotaped Deposition Mr. Christopher L. Gordon ("Gordon Deposition"), p. 56:5-12, Exhibit C to Defendant's MSJ, Docket Entry No. 27-3, p. 6.

[6]See Jordan Deposition, pp. 50:23-51:16, 66:10-20, 92:3-93:5, Exhibit D to Defendant's MSJ, Docket Entry No. 27-8, pp. 4, 7, 13-14; Gordon Deposition, pp. 57:21-59:16, 112:15-113:12, Exhibit C to Defendant's MSJ, Docket Entry No. 27-3, pp. 7, 18-19.

[7]Jordan Deposition, pp. 66:21-69:11, Exhibit D to Defendant's MSJ, Docket Entry No. 27-8, pp. 7-8; Gordon Deposition, pp. 122:1-131:9; Exhibit C to Defendant's MSJ, Docket Entry No. 27-3, pp. 21-23.

[8]Jordan Deposition, pp. 54:19-553, Exhibit D to Defendant's MSJ, Docket Entry No. 27-8, p. 5.  See also Oral Deposition of Helix Rig Supervisor Chad Crenshaw ("Crensahw Deposition"), pp. 5:1-3 (stating his position as Rig Supervisor), 9:24-10:4, 45:3-16, Exhibit E to Defendant's MSJ, Docket Entry No. 27-15, pp.3, 4 and 8.

individuals on competency and commenting on areas of strength and areas in need of training.[9]

Helix hired Jordan as an assistant driller in February of 2008, and Jordan worked in that position until October of 2013 when he was promoted to the position of driller.[10]   Jordan worked as a driller from October of 2013 until June of 2016 when he was discharged.[11]   Helix calculated Jordan's pay on a daily basis, which during his employment as a driller, ranged from $923.00-$1,014.00 per day.[12]   Jordan's daily rate of pay stayed constant regardless of the number of hours he worked in a day.[13]   Jordan was paid on a bi-weekly basis and he always received more than $455.00 for any week that he worked.[14]   Jordan earned more than $100,000.00 each complete year he worked as a driller.[15]

---

[9]Jordan Deposition, pp. 72:22-77:16, Exhibit D to Defendant's MSJ, Docket Entry No. 27-8, pp. 8-10; Gordon Deposition, pp. 63:19-25, 90:9-91:21, Exhibit C to Defendant's MSJ, Docket Entry No. 27-3, pp. 8 and 14; Crensahw Deposition, pp. 16:3-17:4, 45:11-13, Exhibit E to Defendant's MSJ, Docket Entry No. 27-15, pp. 5-6, 8.

[10]Jordan Deposition, p. 46:10-19, Exhibit D to Defendant's MSJ, Docket Entry No. 27-8, p. 3;  McNeal Declaration, Exhibit A to Defendant's MSJ, Docket Entry No. 27-1, p. 3 ¶11.

[11]McNeal Declaration, Exhibit A to Defendant's MSJ, Docket Entry No. 27-1, p. 3 ¶12.

[12]Jordan Deposition, pp. 83:22-84:7, Exhibit D to Defendant's MSJ, Docket Entry No. 27-8, p. 11.

[13]Id. at 87:13-15, Docket Entry No. 27-8, p. 12.

[14]Id. at 86:6-8, Docket Entry No. 27-8, p. 12.

[15]Id. at 84:8-85:16, Docket Entry No. 27-8, pp. 11-12.  See
(continued...)

Helix hired Gordon as a driller in November of 2013, and Gordon worked in that position until June of 2015 when he was discharged.[16] Helix rehired Gordon as a driller in July of 2015 and he worked in that position until December of 2016 when he was demoted to the position of assistant driller.[17] Helix calculated Gordon's pay on a daily basis, which during his employment as a driller, ranged from $923.00-$985.00 per day.[18] Gordon's daily rate of pay stayed constant regardless of the number of hours he worked, he was paid on a bi-weekly basis, always received more than $455.00 in any week that he worked, and earned more than $100,000.00 each year he worked as a driller.[19]

---

[15](...continued)
also Jordan's 2014-2016 W2s, Exhibit D-6 to Defendant's MSJ, Docket Entry No. 27-14.

[16]Gordon Deposition, pp. 55:9-11, 75:2-14, Exhibit C to Defendant's MSJ, Docket Entry No. 27-3, pp. 6 and 10.  See also Gordon's Offer of Employment, Exhibit C-2 to Defendant's MSJ, Docket Entry No. 27-5.

[17]Gordon Deposition, pp. 75:15-18, 78:14-21, 118:20-25, Exhibit C to Defendant's MSJ, Docket Entry No. 27-3, pp. 10, 11, and 20. See also Gordon's Rehire Letter, Exhibit C-3 to Defendant's MSJ, Docket Entry No. 27-6.

[18]Gordon Deposition, pp. 55:12-15, Exhibit C to Defendant's MSJ, Docket Entry No. 27-3, p. 6; See also Gordon's Offer of Employment, Exhibit C-2 to Defendant's MSJ, Docket Entry No. 27-5; and Gordon's Rehire Letter, Exhibit C-3 to Defendant's MSJ, Docket Entry No. 27-6.

[19]Gordon Deposition, pp. 54:7-55:18 Exhibit C to Defendant's MSJ, Docket Entry No. 27-3, p. 6. See also Gordon's 2014-2016 W2s, Exhibit C-4 to Defendant's MSJ, Docket Entry No. 27-7.

**B.    Procedural History**

On June 23, 2016, Jordan filed an Original Complaint, individually and on behalf of all others similarly situated, seeking damages for unpaid overtime wages pursuant to the FLSA based on allegations that Helix misclassified him as exempt and improperly paid him on a day rate basis with no overtime compensation.[20]

On July 18, 2016, Helix filed its Original Answer denying plaintiff's allegations, and asserting several affirmative defenses, including that Jordan was exempt from the FLSA's overtime requirements under the executive, highly compensated, administrative, and combination exemptions.[21]

The parties stipulated to conditional certification,[22] and only one other individual, Christopher Gordon ("Gordon"), joined the class.[23]

--------

[20]See Complaint, Docket Entry No. 1, pp. 1, 4-5.

[21]See Defendant Helix Energy Solutions Group, Inc.'s Original Answer and Affirmative Defenses to Plaintiff's Original Complaint ("Original Answer"), Docket Entry No. 7, p. 2 ¶3.  See also Defendant's Response, Docket Entry No. 36, p. 10 n.1 ("Helix withdraws its affirmative defense on the professional exemption.").

[22]See Stipulation and Order Signed by Judge Lake Re: Conditional Certification and Notice, Docket Entry No. 15.

[23]See Notice of Consent, Docket Entry No. 18.

On April 27, 2018, Helix filed Defendant's MSJ, asserting that no genuine issues of material fact exist that Jordan and Gordon are exempt under two FLSA exemptions: the executive and highly compensated exemptions, that it is entitled to summary judgment on the issue of willfulness, and that fact issues exist on the administrative and combination exemptions.[24]

On April 30, 2018, Jordan filed his MPSJ, arguing that Helix waived its right to assert FLSA exemptions as affirmative defenses, and that even if it did not waive its affirmative defenses, Helix cannot meet its burden on the executive, highly compensated, administrative, combination, professional, and foreign exemptions, and that Helix cannot prove that it acted in good faith.[25]

Both parties have filed responses in opposition to the other party's summary judgment motion,[26] and replies in support of their respective motions for summary judgment.[27]

---

[24]Defendant's MSJ, Docket Entry No. 27.

[25]Plaintiff's MPSJ, Docket Entry No. 29.

[26]See Plaintiff's Response, Docket Entry No. 35; Defendant Helix Energy Solutions Group, Inc.'s Response to Plaintiffs' Partial Motion for Summary Judgment ("Defendant's Response"), Docket Entry No. 36.

[27]See Defendant Helix Energy Solutions Group, Inc.'s Reply in Support of Defendant's Motion for Summary Judgment ("Defendant's Reply"), Docket Entry No. 37; Plaintiff Ralph Jordan's Reply in Support of His Motion for Partial Summary Judgment ("Plaintiff's Reply"), Docket Entry No. 38.

## II. **Standard of Review**

Summary judgment is warranted if the movant establishes that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). An examination of substantive law determines which facts are material.  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).  Material facts are those facts that "might affect the outcome of the suit under the governing law."  Id.  A genuine issue as to a material fact exists if the evidence is such that a reasonable trier of fact could resolve the dispute in the nonmoving party's favor.  Id. at 2511.  The Supreme Court has interpreted the plain language of Rule 56(a) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).  The movant must inform the court of the basis for summary judgment and identify relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate there are no genuine fact issues.  Id. at 2553.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must produce evidence that 'would entitle it to a directed verdict if the

-8-

evidence went uncontroverted at trial.'" <u>Dallas/Fort Worth International Airport Board v. INet Airport Systems, Inc.</u>, 819 F.3d 245, 255 (5th Cir. 2016) (quoting <u>International Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1264-65 (5th Cir. 1991)). For example if a defendant moves for summary judgment on the basis of an affirmative defense, "it must establish beyond dispute all of the defense's essential elements." <u>Bank of Louisiana v. Aetna U.S. Healthcare Inc.</u>, 468 F.3d 237, 241 (5th Cir. 2006). If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. <u>Celotex</u>, 106 S. Ct. 2553.

If the movant satisfies its initial burden, the burden shifts to the nonmoving party to show by affidavits, depositions, answers to interrogatories, admissions on file, or other evidence that summary judgment is not warranted because genuine fact issues exist. <u>Celotex</u>, 106 S. Ct. 2553. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. <u>Id.</u> In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in

favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>)(per curiam). "When parties file cross-motions for summary judgment, [the court must] review 'each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." <u>Cooley v. Housing Authority of City of Slidell</u>, 747 F.3d 295, 298 (5th Cir. 2014) (quoting <u>Ford Motor Co. v. Texas Department of Transportation</u>, 264 F.3d 493, 498 (5th Cir. 2001)).

## III.  <u>Cross-Motions for Summary Judgment</u>

Jordan has alleged that he and Gordon were non-exempt employees under the FLSA and that Helix violated the FLSA by failing to pay them overtime.[28]  Helix has responded that Jordan and Gordon were exempt from the FLSA's overtime requirements under the executive, administrative, professional, combination, and/or highly compensated employee exemptions.[29]  Helix argues that it is entitled to summary judgment that Jordan and Gordon were exempt from the FLSA's overtime provisions as a matter of law under the executive and highly-compensated exemptions, and, if not, that plaintiffs are

---

[28]<u>See</u> Complaint, Docket Entry No. 1.

[29]<u>See</u> Original Answer, Docket Entry No. 7, p. 2 ¶3.  <u>See also</u> Defendant's Response, Docket Entry No. 36, p. 10 n.1 ("Helix withdraws its affirmative defense on the professional exemption."), p.10 n.6 (same).

unable to establish that any violation of the FLSA was willful.[30] Jordan argues that plaintiffs are entitled to summary judgment that he and Gordon are not exempt from the FLSA's overtime provisions as a matter of law under the executive, administrative, professional, combination, highly compensated, and foreign employee exemptions, and that Helix did not have a good faith basis for its pay practices.[31] Jordan also argues that Helix has waived its exemption and good faith defenses by failing to plead the factual basis for them.[32] Helix argues in response that it never asserted the foreign exemption, that it withdraws its affirmative defense on the professional exemption, and that genuine issues of material fact preclude granting plaintiff's motion for summary judgment that he and Gordon are not exempt under the administrative and combination exemptions.[33] Helix also argues that its affirmative defenses are sufficiently pleaded.[34]

---

[30]Defendant's MSJ, Docket Entry No. 27, pp. 6, 11-20; Defendant's Response, Docket Entry No. 36, pp. 16-17 and 19-26.

[31]Plaintiff's MPSJ, Docket Entry No. 29, pp. 17, 23-36; Plaintiff's Response, Docket Entry No. 35, pp. 23-41.

[32]Plaintiff's MPSJ, Docket Entry No. 29, pp. 17, 19, 21-23 (exemption defenses), and 34-35 (good faith defenses).

[33]Defendant's Response, Docket Entry No. 36, p. 10 n.1, p. 26 n.6, and pp. 27-32.

[34]Id. at 17-18.

**A.   Applicable Law**

The FLSA provides that "[n]o employer shall employ any of his employees . . . for a workweek longer than forty hours . . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(2). The FLSA does, however, include a number of exemptions to this requirement. See Zannikos v. Oil Inspections (U.S.A.), Inc., 605 F. App'x 349, 352 (5th Cir. 2015) (per curiam) ("Certain employees, however, are exempt from the overtime requirements [of the FLSA]."). Workers employed in bona fide executive, administrative, or professional capacities are exempt from the FLSA's overtime requirements. See 29 U.S.C. § 213(a)(1) (exempting from § 207 "any employee employed in a bona fide executive, administrative, or professional capacity . . ."). The Department of Labor ("DOL"), which is tasked with administering the FLSA, 29 U.S.C. § 204, has published regulations that define these exemptions. Pursuant to the DOL regulations highly compensated employees who perform at least one of the duties of an executive, administrative, or professional employee are exempt from the FLSA's overtime requirements, see 29 C.F.R. § 541.601, and employees who perform "a combination of exempt duties . . . for executive, administrative[, and] professional[] . . . employees," are also exempted from the FLSA's overtime requirements. See 29 C.F.R. § 541.708.

-12-

"[T]he general rule [is] that the application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof." Corning Glass Works v. Brennan, 94 S. Ct. 2223, 2229 (1974). "[T]he ultimate determination of whether an employer qualifies for an exemption under the FLSA is a question of law." Singer v. City of Waco, Texas, 324 F.3d 813, 818 (5th Cir. 2003), cert. denied, 124 S. Ct. 1406 (2004) (citing Lott v. Howard Wilson Chrysler-Plymouth, Inc., 203 F.3d 326, 331 (5th Cir. 2000)). "That ultimate determination, however, relies on many factual determinations that can be resolved by a jury." Id. See also Zannikos, 605 F. App'x at 352 ("Whether an employee falls within an exemption is a question of law; the amount of time the employee devotes to particular duties, as well as the significance of those duties, are questions of fact.").

Jordan asserts that the FLSA exemptions must be narrowly construed against the employer.[35] Exemptions from the FLSA's general rule have long been construed narrowly against the employer. See Allen v. Coil Tubing Services, L.L.C., 755 F.3d 279, 283 (5th Cir. 2014) (citing Songer v. Dillon Resources, Inc., 618 F.3d 467, 471 (5th Cir. 2010)). However, in Encino Motorcars, LLC v. Navarro, 138 S. Ct. 1134 (2018), the Supreme Court rejected that premise stating:

> The [circuit court] also invoked the principle that exemptions to the FLSA should be construed narrowly. . .

---

[35]Plaintiff's MPSJ, Docket Entry No. 29, pp. 19-21.

-13-

> . We reject this principle as a useful guidepost for
> interpreting the FLSA.   Because the FLSA gives no
> "textual indication" that is exemptions should be
> construed narrowly, "there is no reason to give [them]
> anything other than a fair (rather than a 'narrow')
> interpretation."   The narrow-construction principle
> relies on the flawed premise that the FLSA "pursues" its
> remedial purpose "at all costs."   But the FLSA has over
> two dozen exemptions in § 213(b) alone, including the one
> at issue here.   Those exemptions are as much a part of
> the FLSA's purpose as the overtime-pay requirement.   We
> thus have no license to give the exemption anything but
> a fair reading.

Id. at 1142.  The Fifth Circuit has now held that FLSA exemptions

are to be given a "fair reading."  Carley v. Crest Pumping

Technologies, L.L.C., 890 F.3d 575, 579 (5th Cir. 2018) ("The

Supreme Court recently clarified that courts are to give FLSA

exemptions 'a fair reading,' as opposed to the narrow

interpretation previously espoused by this and other circuits.").


**B.    Helix Has Not Waived Its Affirmative Defenses**

Asserting that "Helix has done nothing in the way of

identifying "the *factual* basis for the applicability of any [FLSA]

exemption,"[36] and that "Helix has done nothing in the way of

identifying the particular good faith defense(s) on which it

intends to rely, and it has done even less in the way of alleging

facts that, if true, would allow it to prevail on its defense(s),"[37]

plaintiffs argue that the court should enter judgment on the

---

[36]Id. at 22.

[37]Id. at 34.

pleadings dismissing Helix's exemption defenses with prejudice under Federal Rule of Civil Procedure 12(c).[38]

Helix responds that its affirmative defenses are specifically pleaded in its Original Answer,[39] and specifically enumerated in response to plaintiff's Tenth Interrogatory.[40]

Plaintiffs reply that "Helix claims that the requisite factual detail is contained in its discovery response,"[41] but that pursuant to Federal Rule of Civil Procedure 12(d), "[t]he Court . . . is prohibited from considering that evidence."[42]

Rule 8(c)(1) of the Federal Rules of Civil Procedure requires a litigant to "affirmatively state any avoidance or affirmative defense."  Fed. R. Civ. P. 8(c)(1).  "Failure to timely plead an affirmative defense may result in waiver and the exclusion of the defense from the case."  LSREF2 Baron, L.L.C. v. Tauch, 751 F.3d 394, 398 (5th Cir. 2014).  "The traditional standard for [pleading] affirmative defenses is that they must contain 'enough specificity or factual particularity to give the plaintiff "fair notice" of the defense that is being advanced.'"  United States ex. rel Parikh v.

---

[38]Id. at 23.

[39]Defendant's Response, Docket Entry No. 36, p. 17.

[40]Id. at 17-18 (citing Interrogatory 10 attached as Exhibit F to Defendant's Response, Docket Entry No. 36-17, pp. 3-4).

[41]Plaintiff's Reply, Docket Entry No. 38, p. 5.

[42]Id. at 6.

Citizens Medical Center, 302 F.R.D. 416, 418 (S.D. Tex. 2014) quoting Woodfield v. Bowman, 193 F.3d 354, 362 (5th Cir. 1999)). The fair notice standard applied to affirmative defenses in Woodfield was derived from the pleading standard for complaints then in effect under Conley v. Gibson, 78 S. Ct. 99 (1957), i.e., "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 103. The Supreme Court's subsequent decisions in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), have changed the pleading standard for complaints to require factual content that allows the court to draw a reasonable inference that the claim is plausible. Twombly, 127 S. Ct. at 1965; Iqbal, 129 S. Ct. 1937 at 1949-50.

The Fifth Circuit has not decided whether the pleading standard announced in Twombly and Iqbal extends to affirmative defenses, and district courts in this circuit are split on the issue. See Parikh, 302 F.R.D. at 418 (listing cases). The Fifth Circuit has applied the fair notice standard in opinions after Twombly and Iqbal suggesting that the lesser standard of fair notice remains the appropriate standard for affirmative defenses. See, e.g., LSREF2, 751 F.3d at 398; Garrison Realty, L.P. v. Fouse Architecture & Interiors, P.C., 546 F. App'x 458, 465 (5th Cir. 2013) (per curiam). Nevertheless, in this case it is not necessary

to choose between the standards because Helix not only identified in its Original Answer the specific affirmative defenses on which it relies in its motion for summary judgment, but also provided plaintiffs the factual basis for those defenses well before the pending motions for summary judgment were filed.

Helix included in its answer the following statements regarding affirmative defenses:

3.    Based upon information and belief, with the exception of assistant drillers, Plaintiff, other drillers, and other day-rate workers are exempt from the overtime provisions of 29 U.S.C. § 207 pursuant to the provisions of 29 U.S.C. § 213, including the administrative, executive, professional exemptions, some combination thereof, and/or the highly compensated employee exemption. Assistant drillers are paid on an hourly basis with overtime compensation for hours worked over forty in a workweek.

4.    Any acts or omissions by Helix with respect to the payment of wages to its assistant drillers, drillers, and day-rate workers, like Plaintiff, were undertaken in good faith reliance on the regulations and interpretations of the Wage Hour Administration of the United States Department of labor and/or legal advice or opinions from outside counsel and were based on long-standing industry standards and practices.[43]

An exemption must be asserted as an affirmative defense to a claim under the FLSA. See Brennan, 94 S. Ct. at 2229 ("the general rule [is] that the application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof"). Because Helix's Original Answer provided

---

[43]Original Answer, Docket Entry No. 7, p. 2 ¶¶3-4.

specificity by identifying both the specific exemptions in the FLSA on which Helix seeks summary judgment, i.e., the executive and highly compensated employee exemptions, and good faith, Helix did not waive these affirmative defenses. See Woodfield, 193 F.3d at 362 (pleading the name of an affirmative defense may be sufficient to avoid waiver). See also Lucas v. NOYPI, Inc., No. Civ. A. H-11-1940, 2012 WL 4754729, at *2 (S.D. Tex. October 3, 2012), aff'd, 536 F. App'x 416 (5th Cir. 2013) (finding that defendant properly raised the affirmative defense for the Motor Carrier Act Exemption when the defendant stated in their answer "Defendants affirmatively plead that they were not required to pay overtime to Plaintiff because his position was subject to an exemption to the payment of overtime under the FLSA, including, but not limited to, the motor carrier exemption in Section 13(b)(1) of the FLSA."); Rodriguez v. Physician Laboratory Services, LLC, Civil Action No. 7:13-CV-622, 2014 WL 847126, at *3 (S.D. Tex. March 4, 2014) (holding that merely seeking to "invoke the 'good faith defense'. . . [g]ives the plaintiff fair notice of the nature of the defense, and avoids an unfair surprise with an unexpected defense"). See also Franks v. Tyhan, Inc., No. CV H-15-191, 2016 WL 1531752, at *3 (S.D. Tex. April 15, 2016) (to plead the affirmative defense of an exemption from the FLSA successfully, the defendant need only identify the exemption of the FLSA by name); Floridia v. DLT 3 Girls, Inc., No. 4:11-CV-3624, 2012 WL 1565533, at *4 (S.D. Tex. May 2, 2102)

(accepting a good faith defense that stated that "Defendants' acts or omissions, if found to be in violation of the FLSA, were in good faith and based upon reasonable grounds for believing that its actions did not violate the FLSA.").

Even a technical failure to comply precisely with the pleading requirements of Rule 8(c) may be excused as long as "the affirmative defense is raised in the trial court in a manner that does not result in unfair surprise." Rogers v. McDorman, 521 F.3d 381, 385 (5th Cir. 2008)). At the heart of Rule 8(c) is the concern that a "defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." Id. "A defendant does not waive a defense if it was raised at a 'pragmatically sufficient time' and did not prejudice the plaintiff in its ability to respond." LSREF2, 751 F.3d at 398 (quoting Rogers, 521 F.3d at 386). "Unfair surprise and prejudice are central concerns underlying the requirement that a defendant timely plead affirmative defenses." Id. at 402.

Plaintiffs do not and cannot contend that they were surprised by the motion for summary judgment based on the executive and highly compensated employee exemptions to the FLSA's overtime requirements because in addition to naming these specific affirmative defenses in its Original Answer, Helix provided the factual basis for them in response to plaintiff's Tenth Interrogatory:

Helix submits that Driller position, held by Plaintiff, is exempt under the seaman, highly compensated, administrative and/or executive exemptions, and/or some combination thereof. Drillers work offshore. They are exempt because they make well in excess of $100,000. Drillers do not "drill" per se but rather supervise the activities of the drill crew, including al drilling documentation, logs, and International Association of Drilling Contract paperwork. Drillers customarily and regularly direct the work of two or more subordinate members of the drill crew. Drillers also work with the Superintendent and the oil and gas client to review and revise various aspects of the well program. Drillers also ensure that the dimensions of the bottom hole assembly components are measured and logged. Drillers generally perform non-manual work directly related to Helix's business and that of its customers. They exercise discretion and independent judgment regarding matters of significance, and they provide suggestions and recommendations on the advancement of other drill crew members.[44]

Although plaintiffs argue that Rule 12(d) prohibits the court from considering Helix's response to plaintiff's Tenth Interrogatory in ruling on their Rule 12(c) motion for judgment on the pleadings, plaintiff's reliance on Rule 12(d) is misplaced. Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Rule 12(d) provides:

If, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all material that is pertinent to the motion.

---

[44]Defendant's Response, Docket Entry No. 36, pp. 17-18 (quoting Interrogatory 10, Exhibit F to Defendant's Response, Docket Entry No. 36-17, pp. 3-4).

Fed. R. Civ. P. 12(d).

The parties to this action have both filed a motion for summary judgment that cite matters outside the pleadings. Both parties have also filed a response to the opposing party's motion, and a reply in support of their own summary judgment motion. Each of these filings reference matters outside of the pleadings that have not been excluded by the court. Accordingly, the court concludes that both parties have received a reasonable opportunity to present all material that is pertinent to the pending motions. Under these circumstances Rule 12(d) does not prohibit the court from considering evidence submitted by Helix in response to Jordan's motion for judgment on the pleadings under Rule 12(c) but, instead, requires the court to treat that motion as one for summary judgment under Rule 56 pursuant to which matters outside the pleadings may be considered.

Because Helix not only identified in its Original Answer the specific affirmative defenses on which it intended to rely, including those on which it seeks summary judgment, i.e., the executive and highly compensated employee exemptions, but also provided plaintiffs the factual basis for those defenses in response to interrogatories provided to plaintiffs well before the pending motions for summary judgment were filed, the court concludes that Helix has not waived those affirmative defenses, and that plaintiffs are not entitled to summary judgment on that basis.

**C.    Fact Issues Regarding Whether Plaintiffs Were Paid on a Salary Basis Preclude Granting Either Party's Summary Judgment Motion**

Because Helix has withdrawn its assertion of the professional exemption, and stated that it never pleaded the foreign exemption, the issue before the court is the applicability of the executive, administrative, combination, and highly compensated employee exemptions.   Helix argues that it is entitled to summary judgment that Jordan and Gordon were exempt from the FLSA's overtime provisions as a matter of law under the executive and highly-compensated exemptions,[45] and that genuine issues of material fact preclude granting plaintiff's motion for summary judgment that he and Gordon are not exempt under the administrative and combination exemptions.[46]   Plaintiffs argue that they are entitled to summary judgment that they are not exempt from the FLSA's overtime provisions as a matter of law under any of these exemptions.[47]

Common to each of the exemptions at issue is the requirement that the employee be paid on a salary basis of at least $455 per week.   29 C.F.R. § 541.600(a) ("To qualify as an exempt executive, administrative or professional employee under section 13(a)(1) of the [FLSA], an employee must be compensated on a salary basis at a rate of not less than $455 per week. . . . exclusive of board,

---

[45]Defendant's MSJ, Docket Entry No. 27, pp. 6, 11-20; Defendant's Response, Docket Entry No. 36, pp. 16-17 and 19-26.

[46]Defendant's Response, Docket Entry No. 36, p. 26 n.6, and pp. 27-32.

[47]Plaintiff's MPSJ, Docket Entry No. 29, pp. 17, 23-36; Plaintiff's Response, Docket Entry No. 35, pp. 23-41.

lodging or other facilities."). See also 29 C.F.R. § 541.100(a)(1)
(executive employees); 29 C.F.R. § 541.200(a)(1) (administrative
employees); 29 C.F.R. § 541.601 (highly compensated employees);
IntraComm, Inc. v. Bajaj, 492 F.3d 285, 295-96 (4th Cir. 2007) (per
curiam) (citing DOL letter opinions in support of conclusion that
employees must be paid on a salary basis to qualify for the
combination exemption). "Salary basis" is defined in the
regulations as follows:

> (a) General rule. An employee will be considered to be
> paid on a "salary basis" within the meaning of these
> regulations if the employee regularly receives each pay
> period on a weekly, or less frequent basis, a
> predetermined amount constituting all or part of the
> employee's compensation, which amount is not subject to
> reduction because of variations in the quality or
> quantity of the work performed.  Subject to the
> exceptions provided in paragraph (b) of this section, an
> exempt employee must receive the full salary for any week
> in which the employee performs any work without regard to
> the number of days or hours worked.  Exempt employees
> need not be paid for any workweek in which they perform
> no work.  An employee is not paid on a salary basis if
> deductions from the employee's predetermined compensation
> are made for absences occasioned by the employer or by
> the operating requirements of the business. If the
> employee is ready, willing and able to work, deductions
> may not be made for time when work is not available.

29 C.F.R. § 541.602(a). Paragraph (b) of § 541.602 provides that
deductions may be made from the wages of salaried employees in
certain circumstances, such as absences of a full day or more for
personal reasons or unpaid disciplinary suspensions of a full day
or more, without destroying the salary basis of the pay.  29 C.F.R.
§ 541.602(b).  See also Cowart v. Ingalls Shipbuilding, Inc., 213
F.3d 261, 264 (5th Cir. 2000) (citing predecessor regulation 29
C.F.R. § 541.118(a)(2)).

1. Defendant Fails to Establish as a Matter of Law that
   Plaintiffs Were Paid on a Salary Basis

As evidence that the plaintiffs were paid on a salary basis, Helix cites Jordan's pay statements showing that he was paid on a bi-weekly basis and received no less than $923.00 per week,[48] deposition testimony of both plaintiffs showing that they were paid on a bi-weekly basis,[49] that at all relevant times they were paid more than $455.00 a week,[50] and that for any day they worked, their daily rate remained unchanged regardless of the amount of hours worked in the day or the quality of the work performed.[51]

Helix also cites the declaration of Kenric McNeal, Helix's Director of Human Resources, that "Helix pays its Drillers a day rate, which is a predetermined sum that remains constant regardless of the hours worked in a day and the quality of the work

---

[48]Defendants' MSJ, Docket Entry No. 27, p. 12 (citing Jordan pay statements, Exhibit D-5 to Defendant's MSJ, Docket Entry No. 28).

[49]Defendants' MSJ, Docket Entry No. 27, p. 12 (citing Jordan Deposition, p. 46:20-23, Exhibit D to Defendant's MSJ, Docket Entry No. 27-8, p. 3; Gordon Deposition, p. 55:12-15, Exhibit C to Defendant's MSJ, Docket Entry No. 27-3, p. 6).

[50]Id. (citing Jordan Deposition, p. 86:6-8, Exhibit D to Defendant's MSJ, Docket Entry No. 27-8, p. 12; Gordon Deposition, p. 80:10-12, Exhibit C to Defendant's MSJ, Docket Entry No. 27-3, p. 11).

[51]Id. at 12-13 (citing Jordan Deposition, pp. 83:22-84:7, 87:1-15, Exhibit D to Defendant's MSJ, Docket Entry No. 27-8, pp. 11-12; Gordon Deposition, pp. 54:7-55:3; Exhibit C to Defendant's MSJ, Docket Entry No. 27-3, p. 6).

performed."[52]   Plaintiffs object to this evidence on grounds that it is inadmissible parole evidence that contradicts the unambiguous terms and conditions of their employment as stated in the written offer of employment sent to Gordon on July 27, 2015.[53]   However, McNeal's declaration is consistent with the plaintiffs' offer letters,[54] plaintiffs' deposition testimony,[55] and plaintiffs' pay statements all of which reflect that Helix agreed to pay plaintiffs, and plaintiffs received, a day rate of pay that remained constant regardless of the number of hours worked and pursuant to which they each received more than $455.00 for any week in which they worked.[56]   Because the McNeal declaration is consistent with the plaintiffs' own testimony and evidence, plaintiffs' objection to this evidence will be overruled.

---

[52]Id. at 13 (citing McNeal Declaration, Exhibit A to Defendant's MSJ, Docket Entry No. 27-1, p. 2 ¶8).

[53]Plaintiff's Response, Docket Entry No. 35, pp. 23-24 (citing Exhibit C-3 to Defendant's MSJ, Docket Entry No. 27-6).

[54]See July 27, 2015 Offer Letter to Gordon, Exhibit C-3 to Defendant's MSJ, Docket Entry No. 27-6; and February 27, 2008 Offer Letter to Jordan, Exhibit D-4 to Defendant's MSJ, Docket Entry No. 28-1.

[55]See Jordan Deposition, pp. 83:20-84:7, 86:6-87:15, Exhibit D to Defendant's MSJ, Docket Entry No. 27-8, pp. 11-12; Gordon Deposition, pp. 54:7-55:3, 80:10-12, Exhibit C to Defendant's MSJ, Docket Entry No. 27-3, pp. 6, 11.

[56]See Jordan Pay Statements, Exhibit D-5 to Defendant's MSJ, Docket Entry No. 28.

Citing <u>Faludi v. US Shale Solution, LLC</u>, No. H-16-3467, 2017 WL 5969261, *1 (S.D. Tex. November 30, 2017), <u>appeal docketed</u>, No. 17-20808 (5th Cir. December 26, 2017), Helix argues that because undisputed evidence shows that Jordan and Gordon were guaranteed a minimum of $923.00 for any day that they worked, the salary-basis test is satisfied.[57]  As evidence that plaintiffs were guaranteed a minimum of $923.00 for any day that they worked, Helix cites Jordan's deposition testimony that $923.00 per day was the lowest amount he was paid,[58] Jordan's pay statements,[59] and the offer of employment sent to Gordon stating in pertinent part, "[f]ollowing are the proposed compensation elements for this position which should be in accordance with our prior discussions: Pay rate: $923.00 per day (to be paid on a bi-weekly basis)."[60]

In <u>Faludi</u> the plaintiff had a written agreement with the defendant stating, "Company shall pay Consultant the following amounts . . .," the least of which was $1,000.00 for each day he performed services.  2017 WL 5969261, at *9.  When the plaintiff

---

[57]Defendant's MSJ, Docket Entry No. 27, pp. 12-13.  <u>See also</u> Defendant's Response, Docket Entry No. 36, pp. 19-20; Defendant's Reply, Docket Entry No. 37, p. 5.

[58]<u>Id.</u> at 13 (citing Jordan Deposition, pp. 84:1-7, Exhibit D to Defendant's MSJ, Docket Entry No. 27-8, p. 11).

[59]<u>Id.</u> (citing Exhibit D-5 to Defendant's MSJ, Docket Entry No. 28).

[60]<u>Id.</u> (citing Exhibit C-3 to Defendant's MSJ, Docket Entry No. 27-6).

sued for violation of the FLSA's overtime requirements, the defendant sought summary judgment arguing inter alia that "the $1,000 daily amount guaranteed under the Agreement therefore 'guaranteed Faludi at least $1,000.00 for each week he performed any services, thus exceeding the $455.00 threshold.'" Id. at *9. This court held that because "$1,000 per day was guaranteed if [the plaintiff] showed up for work and performed the agreed upon services[, t]his satisfies the minimum guaranteed amount required to be paid on a salary basis." Id. at *10.

Faludi is distinguishable and does not control the outcome of this case for two reasons. First, in Faludi the parties had a written agreement that guaranteed the plaintiff pay that exceeded $455.00 for any week in which he worked. Here, there was no written agreement governing the plaintiffs' employment. Even though the letters offering the plaintiffs employment referenced day rates that exceeded $455.00, and the plaintiffs received pay that exceeded that amount for every week they worked, the evidence also shows that the day rate plaintiffs were paid changed from time to time and therefore was not as Helix contends, an amount that was both predetermined and guaranteed not to drop below $455.00 per day.[61] Faludi is also distinguishable because

---

[61]See Jordan Deposition, pp. 83:20-84:7, Exhibit D to Defendant's MSJ, Docket Entry No. 28-8, p. 11 (testifying that his day rate changed from $985.00, to $1,014.00, to $923.00).

-27-

> [t]he precise question raised by the parties' arguments
> [there was] whether the language of 29 C.F.R.
> § 541.602(a) allowing the exemption as long as the
> employee's predetermined pay 'is not subject to reduction
> because of variations in the . . . quantity of the work
> performed' includes a voluntary reduction by the employee
> as opposed to a reduction by the employer.

Id. Voluntary reductions in pay initiated by the plaintiffs are not at issue in this case. Accordingly, the court is not persuaded that Faludi controls the outcome of this case.

Helix has presented undisputed evidence that plaintiffs were paid at a rate that satisfied the pay rate required for them to be qualified for one of the exemptions at issue, i.e., a rate that exceeded $455.00 for each week worked. See 29 C.F.R. § 541.600(a). While Helix has presented evidence from which a reasonable trier of fact could conclude that plaintiffs were guaranteed to receive a qualifying rate of pay for each week worked, Helix has not presented evidence that requires such a finding as a matter of law. Helix has similarly presented evidence from which a reasonable fact finder could — but need not — conclude that plaintiffs "regularly receive[d] each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed," as required by 29 C.F.R. § 541.602(a). However, Helix has neither argued nor presented any evidence capable of establishing that plaintiffs received the full salary for any week in which they

performed any work without regard to the number of days or hours worked, as also required by 29 C.F.R. § 541.602(a) ("an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked"). The court therefore concludes that Helix has failed to carry its burden of establishing that it is entitled to judgment as a matter of law that plaintiffs were paid on a "salary basis." Accordingly, Defendant's MSJ will be denied.

> 2. <u>Plaintiffs Fail to Establish as a Matter of Law that They Were Not Paid on a Salary Basis</u>

Plaintiffs argue that because undisputed evidence shows that Helix paid them on a day-rate basis as opposed to a salary basis, they are entitled to summary judgment because the salary basis test is not satisfied.[62] Plaintiffs argue that contrary to Helix's contention that they were guaranteed a minimum of $923.00 for any day they worked, the offer letter that Gordon received establishes as a matter of law that he was an at-will employee guaranteed nothing.[63] Citing Gordon's offer of employment, plaintiffs argue that "the sole pieces of documentary evidence that outline the

---

[62]Plaintiff's MPSJ, Docket Entry No. 29, pp. 24-26. <u>See also</u> Plaintiff's Response, Docket Entry No. 35, pp. 16-17 and 25-33.

[63]Plaintiff's Response, Docket Entry No. 35, p. 29. <u>See also</u> Plaintiff's Reply, Docket Entry No. 38, p. 6 (asserting "No Evidence of a Guarantee Means That the Drillers Were Not Paid on a Salary Basis").

terms and conditions of Jordan's and Gordon's employment expressly disclaim any guarantees."[64]   Gordon's offer of employment stated:

> This letter only serves to communicate a contingent offer of employment and is not intended to create, nor is it to be construed to constitute, an employment contract between you and Helix.   Your employment with Helix will be "at-will," that is the employment relationship can be terminated at any time by either you or Helix.[65]

Citing <u>Dufrene v. Browning Ferris, Inc.</u>, 207 F.3d 264, 268 (5th Cir. 2000), and <u>Hughes v. Gulf Interstate Field Services</u>, 878 F.3d 183, 187-93 (6th Cir. 2017), plaintiffs argue that they were not paid on a salary basis because "Helix admits the wages it paid to Jordan and Gordon were computed 'by multiplying the number of days worked by their daily wage.'"[66]   Plaintiffs also cite <u>McQueen v. Chevron Corp.</u>, No. C-16-02089, 2018 WL 1989937, *1 (N.D. Calif. April 3, 2018), for holding that payment of $1,000.00 per day did not qualify as payment on a salary basis.[67]

Dufrene involved a dispute over the method used by the defendant employer to calculate overtime pay for non-exempt

---

[64]Plaintiff's Response, Docket Entry No. 35, p. 32 (citing Exhibit C-3 to Defendant's MSJ, Docket Entry No. 27-6).

[65]Gordon's offer of employment, Exhibit C-3 to Defendant's MSJ, Docket Entry No. 27-6, p. 3.

[66]Plaintiff's MPSJ, Docket Entry No. 29, p. 26 (quoting <u>Dufrene v. Browning-Ferris, Inc.</u>, 994 F. Supp. 748, 754 (E.D. La. 1998), <u>aff'd</u>, 207 F.3d 264 (5th Cir. 2000)). <u>See also</u> Plaintiff's Response, Docket Entry No. 35, p. 27; Plaintiff's Reply, Docket Entry No. 38, pp. 6-8.

[67]Plaintiff's Response, Docket Entry No. 35, pp. 28-29.

employee plaintiffs.  At issue was whether the employee's overtime pay was to be calculated under 29 C.F.R. § 778.112 governing employees paid a day rate, or under 29 C.F.R. § 778.114 governing employees paid a fixed salary for fluctuating hours.  The undisputed evidence showed that the employees were paid a day rate of $74.50 or $76.00 for each day's work regardless of the number of hours worked in a day, and that they were not paid for days not worked.  207 F.3d at 268.  The district court held that § 778.112 provided the appropriate method for calculating overtime pay reasoning:

> The distinction between the two regulations is explicit: Section 778.112 applies to workers who are "paid a flat sum for a day's work or for doing a particular job" and, in contrast, § 778.114 applies to employees who are "employed on a salary basis."  Department of Labor Regulations provide that an employee is considered to be paid "on a salary basis" within the meaning of the regulations "if under his employment agreement he regularly receives each pay period on a weekly or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to *reduction because of variations* in the *quality* or *quantity* of the work performed.  Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked."  29 C.F.R. § 541.118(a)[68] (emphasis added).  Plaintiffs fail to meet this definition because they generally do not receive compensation for the days they do not work.  The workers do not receive a flat salary per week regardless of how many days of the week they have worked.  Instead, they are paid a daily rate, and their weekly salary is computed by multiplying the number of days

---

[68]This regulation has since been revised and renumbered to 29 C.F.R. § 541.602(a).  See <u>Cowart</u>, 213 F.3d at 264.

worked by their daily wage.  Accordingly, it is clear that they are covered by § 778.112, not § 778.114.

994 F. Supp. at 754.  On appeal the Fifth Circuit affirmed the district court's determination that § 778.112 applied to the employees, stating that "employees here are *not* paid a salary for a workweek.  Instead, they are paid for the number of days they work in a week: a day-rate."  207 F.3d at 268.

Hughes involved a dispute over whether employees paid a day rate of $337.00 were exempt from the FLSA's overtime requirements because they qualified as highly compensated employees.  The employees conceded that they were paid in a manner and at a rate consistent with being exempt, but they argued that it mattered whether their salaries were guaranteed, and whether a rational trier of fact could have concluded that there was no such guarantee.  The district court granted summary judgment to the defendant employer, but the Sixth Circuit reversed explaining that the plaintiffs had introduced evidence that their salary was calculated at the rate of $337.00 per day worked, that there was thus "reason to conclude that their pay was calculated *more* frequently than weekly[, a]nd it is very much disputed whether what they received weekly was in fact guaranteed."  878 F.3d at 189.

Helix argues that Dufrene and Hughes are legally and/or factually distinguishable from this case.[69]  Helix argues that

---

[69]Defendant's Response, Docket Entry No. 36, pp. 19-20; (continued...)

Dufrene and Hughes are factually distinguishable because the employees at issue in those case were undisputedly paid day rates that did not satisfy the requirement that an exempt employee be compensated on a salary basis at a rate of not less than $455 per week. See 29 C.F.R. § 541.600. See Dufrene, 994 F. Supp. at 750 (employees paid day rates ranging from $61.75-$76.00); Hughes, 878 F.3d at 185 and 189 (employees paid a day rate of $337.00). While this factual distinction is relevant to whether the rate of weekly pay requirement is satisfied, it has no bearing on whether the other requirements for establishing that plaintiffs were paid on a "salary basis" are satisfied.

Helix argues that Dufrene is legally distinguishable because at issue there was which of two methodologies for calculating overtime pay applied to undisputedly non-exempt employees. Helix argues that "Dufrene does not establish that a salary based on a day rate fails the salary basis requirement for exemptions under the FLSA, because it does not consider this issue."[70] While Helix is correct that the precise question at issue in Dufrene was not the precise question at issue here, the Dufrene court's discussion of § 541.602(a)'s predecessor, 29 C.F.R. § 541.118(a), indicates that satisfying § 541.600(a)'s weekly minimum rate of payment of

---

[69](...continued)
Defendant's Reply, Docket Entry No. 37, pp. 2-5.

[70]Defendant's Response, Docket Entry No. 36, pp. 19-20.

$455.00 is only one of several requirements that must be met to establish that employees are paid on a "salary basis." In addition to receiving a weekly minimum rate of payment, employees must also receive their "full salary for any week in which they perform any work without regard to the number of days or hours worked." Dufrene, 994 F. Supp. at 754 (citing 29 C.F.R. § 541.118(a), predecessor of 29 C.F.R § 541.602(a)). While plaintiffs argue that this requirement cannot be satisfied in this case because the undisputed evidence establishes that they were paid a day rate, "merely because an employee's earnings are computed on a daily rate basis does not mean that the employee is not paid on a salary basis." Akins v. Worley Catastrophe Response, LLC, Civil Action No. 12-2401, 2013 WL 19077486, *4 (E.D. La. May 8, 2013) (quoting 29 C.F.R. § 604(b) ("An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned.")).

The deposition excerpts and other evidence presented by plaintiffs are not sufficient to carry their burden of showing that they were not paid on a salary basis. Defendants have presented competent summary judgment evidence, consisting of the declaration testimony of Kenric McNeal, Helix's Director of Human Resources,

excerpts from plaintiffs' deposition testimony, plaintiffs' pay statements, and plaintiffs' offers of employment, showing that material fact issues are in dispute concerning whether plaintiffs were paid on a salary basis, including but not limited to, whether plaintiffs were guaranteed a minimum of at least $455 per week for the weeks that they worked, and whether plaintiffs were paid their full rate and did not have their wages reduced based on the quantity of work when they did not work full weeks.  Because the question of whether plaintiffs were paid on a salary basis remains in dispute, they cannot prevail on their motion for partial summary judgment on their contentions that they were not exempt executive, administrative, combination, or highly compensated employees.  Accordingly, plaintiffs' motion for partial summary judgment will be denied.

**D.   Genuine Issues of Material Fact Preclude Granting Either Party's Summary Judgment Motion on Willfulness**

Helix moves for summary judgment on the issue of willfulness arguing that plaintiffs cannot present any evidence that Helix knew its pay practices violated the FLSA.[71]  Plaintiffs move for summary judgment on the issue of willfulness contending there is no genuine issue of material fact that would allow a jury to avoid the conclusion that Helix willfully violated the FLSA.[72]  For the reasons stated in the preceding sections, the court has concluded

---

[71]Defendant's MSJ, Docket Entry No. 27, pp. 19-20.

[72]Plaintiff's MPSJ, Docket Entry No. 29, p. 35.

that genuine issues of material fact exist as to whether Helix violated the FLSA. Reviewing the parties' cited evidence leads the court to conclude that genuine issues of material fact also exist as to whether any violation that Helix may have made was willful. Therefore, both parties' motions for summary judgment on the issue of willfulness will be denied.

## IV.  <u>Conclusions and Order</u>

For the reasons stated in § III.C.1, above, plaintiffs' objection to ¶¶8-9 of the McNeal Declaration are **OVERRULED,** and for the reasons stated in §§ III.C.1 and III.D, above, Helix Energy Solutions Group, Inc.'s Motion for Summary Judgment (Docket Entry No. 27) is **DENIED.**

For the reasons stated in §§ III.B, III.C.2, and III.D, above, Plaintiff Ralph Jordan's Motion for Partial Summary Judgment (Docket Entry No. 29) is **DENIED.**

The Joint Pretrial Order must be filed by November 2, 2018.

Docket Call will be held on November 9, 2018, at 3:00 p.m. in Courtroom 9-B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.

**SIGNED** at Houston, Texas, this 11th day of October, 2018.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE